UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARSHALL DANIELS,<br><br>   Plaintiff,<br><br> v.<br><br>ALPHABET INC., et al.,<br><br>   Defendants. | Case No. 20-cv-04687-VKD<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 39 |

Before the Court is defendants' motion for an award of attorneys' fees. The Court previously deferred ruling on this motion pending plaintiff Marshall Daniels's appeal to the Ninth Circuit. Dkt. No. 46. The Ninth Circuit has issued a mandate and, pursuant to Local Rule 7-2, this motion is suitable for decision without oral argument. For the following reasons, the Court grants defendants' motion.[1]

I. **BACKGROUND**

 A. **Procedural Background**

On July 14, 2020, Mr. Daniels filed a complaint alleging that defendants had violated his First Amendment rights under 42 U.S.C. § 1983 and asserting several other state-law claims. Dkt. No. 1. Defendants moved to dismiss the complaint. Dkt. No. 18. On March 31, 2021, the Court granted defendants' motion and dismissed all of Mr. Daniels's claims, including his First Amendment claim. Dkt. No. 31 at 8-13, 22-23. The Court gave Mr. Daniels leave to amend his state-law breach of contract claim, but concluded that amendment would be futile as to the

---

[1] Mr. Daniels, Alphabet, Google, and YouTube have appeared and consented to magistrate judge jurisdiction. Dkt. Nos. 16, 17.

remainder of his claims, which the Court dismissed with prejudice. *Id.* at 22-23.

On April 14, 2021, Mr. Daniels filed an amended complaint, and defendants again moved to dismiss. Dkt. Nos. 32, 33. The Court granted defendants' motion to dismiss the amended complaint with prejudice. Dkt. No. 37 at 6.

On July 22, 2021, defendants moved for an award of attorneys' fees pursuant to 42 U.S.C. § 1988(b), seeking an award of $38,576 for fees incurred in defending against Mr. Daniels's § 1983 claim for violation of his First Amendment rights. Dkt. No. 39. Meanwhile, Mr. Daniels filed a notice of appeal from the order of dismissal. Dkt. No. 40. Due in part to the pending appeal, the Court deferred ruling on defendants' motion. Dkt. No. 46. After Mr. Daniels failed to file an opening brief in his appeal, the Ninth Circuit dismissed the appeal for failure to prosecute. Dkt. No. 47. Defendants' motion is ripe for consideration.

### B. Factual Background[2]

Mr. Daniels has uploaded videos and live commentary concerning "social, political and educational" issues to YouTube since July 2015. Dkt. No. 1 ¶¶ 5, 6. On April 21, 2020, Mr. Daniels live-streamed a video entitled, "Fauci Silenced Dr. Judy Mikovits from Warning the American Public" ("the Fauci video"). *Id.* ¶ 9. And on May 28, 2020, Mr. Daniels live-streamed a video entitled, "George Floyd, Riots & Anonymous Exposed as Deep State Psyop for NOW" ("the George Floyd video"). *Id.* ¶ 10. Both videos were removed in the weeks following their upload by Google and YouTube for purportedly violating YouTube's Community Guidelines or its policies on harassment and cyberbullying. Mr. Daniels claims that the removal of the Fauci and George Floyd videos was done "at the behest of members of Congress." *Id.* ¶¶ 28-30.

In his original complaint, Mr. Daniels alleged that two members of Congress, then-Speaker of the House of Representatives Nancy Pelosi and Representative Adam Schiff, coerced defendants into taking action that resulted in YouTube's removal of two of his videos from the YouTube service. According to the complaint, Rep. Schiff wrote two letters to Google executives expressing concern regarding misinformation about vaccinations posted on YouTube and

---

[2] Mr. Daniels's allegations are described in greater detail in the Court's order on defendants' first motion to dismiss. Dkt. No. 31.

encouraging Google to take steps to provide accurate information on vaccinations and to remove or limit content promoting inaccurate information related to the COVID-19 pandemic. *Id.* ¶ 20, Exs. A and B. In addition, the complaint cited public statements from Speaker Pelosi suggesting that Congress could abrogate the immunity available to internet service providers under Section 230 of the Communications Decency Act and making other comments criticizing social media platforms for permitting disinformation to proliferate online. *Id.* ¶¶ 23, 24. Mr. Daniels alleged that these communications and statements show that these members of Congress coerced and encouraged defendants to engage in "reverse censorship," or the drowning out of disfavored content through the creation and dissemination of favored content. *Id.* ¶¶ 25, 27.

## II. LEGAL STANDARD

"In any action or proceeding to enforce . . . section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Attorneys' fees may be awarded against an unsuccessful § 1983 plaintiff only "in exceptional circumstances" where the court finds "the plaintiff's action was frivolous, unreasonable, or without foundation." *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 968 (9th Cir. 2011) (cleaned up); *see also Fox v. Vice*, 563 U.S. 826, 833 (2011); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978). This rigorous standard applies to prevailing defendants—as contrasted with prevailing plaintiffs—because the "policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant." *Tyler v. Coeur D'Alene Sch. Dist. #271*, No. 2:21-CV-00104-DCN, 2022 WL 819447, at *1 (D. Idaho Mar. 17, 2022) (quoting *Christiansburg*, 434 U.S. at 418-19).

"An action becomes frivolous when the result appears obvious or the arguments are wholly without merit," *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (citing *Christiansburg*, 434 U.S. at 422), or when the plaintiff "lacked a factual and legal basis for his . . . claims at the outset of the litigation," *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006). "In determining whether this standard has been met, a district court must assess the claim at the time the complaint was filed, and must avoid post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or

3

without foundation." *Tutor-Saliba*, 452 F.3d at 1060 (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. Whether Mr. Daniels's First Amendment Claim Was Frivolous

Defendants argue that Mr. Daniels's First Amendment claim lacked a factual and legal basis from the outset and, thus, a fee award is justified.[3] Dkt. No. 39 at 5-8. Specifically, defendants argue that Mr. Daniels's First Amendment claim was frivolous under Ninth Circuit law because he purported to challenge the conduct of individual members of the *federal* government under 42 U.S.C. § 1983 when that statute applies only to action taken under color of *state* law. *Id.* at 6. In addition, defendants argue that Mr. Daniels's First Amendment claim was frivolous because he stated no viable theory of *any* government action—state or federal—by any defendant, all of whom are private entities. *Id.* at 7. Mr. Daniels counters that his First Amendment claim was not frivolous because Congressional representatives may be considered state actors, and because his claim was based on a novel theory for which he sought to establish legal precedent in good faith. *See* Dkt. No. 42 at 7.

Defendants are correct that Mr. Daniels's § 1983 claim for violation of the First Amendment was not premised on any theory that defendants acted under color of state law. Dkt. No. 39 at 6. As defendants observe, in *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997), the Ninth Circuit granted the defendant's request for an award of attorneys' fees where the plaintiff pursued a § 1983 claim based on alleged *federal*, not state, action. In that case, the plaintiff was employed by a private, nonprofit agency that operated a Head Start program, which was funded primarily by the federal government and subject to federal regulation. *Id.* at 1339. When the plaintiff, a teacher in the Head Start program, was laid off from her employment, she sued the nonprofit, arguing that her termination was due to her criticisms of the Head Start program. *Id.* The plaintiff asserted four claims, including a § 1983 claim for violation of her First, Fifth, and Fourteenth Amendment rights. *Id.* at 1340. The plaintiff argued that her

---

[3] Defendants do not seek a fee award as to any of Mr. Daniels's other claims.

nonprofit employer was a state actor because the Head Start program acted pursuant to federal regulations, and she argued that under Ninth Circuit law federal government actors can be sued under § 1983. The Ninth Circuit concluded that the § 1983 claim was "unreasonable" and "meritless," and "invalid on its face in its reliance upon § 1983 as a cause of action against alleged federal government actors." *Id.* at 1343 (quoting *Franceschi v. Schwartz*, 57 F.3d 828, 832 (9th Cir. 1995); *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994)). The court took the opportunity to admonish future plaintiffs: "Lest there be any continuing confusion, we take this opportunity to remind the Bar that by its very terms, § 1983 precludes liability in federal government actors. As no State action is implicated, we must deny Morse's request for attorneys' fees under § 1988." *Id.* The court instead awarded attorneys' fees on appeal to the prevailing defendant. *Id.*

Mr. Daniels ignores defendants' arguments regarding *Morse* and makes no effort to distinguish his claim from the § 1983 claim at issue in that case.[4] Instead, Mr. Daniels argues that members of Congress may be considered state actors because they are "representative[s] of the *state* s/he represents." Dkt. No. 42 at 3. For the reasons explained in defendants' reply, this argument lacks merit and is not supported by either of the cases on which Mr. Daniels relies, neither of which concerns a member of Congress being treated as a state actor by virtue of representing a state in Congress. Dkt. No. 43 at 2-3.

Mr. Daniels nevertheless argues that his First Amendment claim should not be considered frivolous because he sought to advance a novel legal theory of government action. None of his arguments are persuasive, as he articulated no plausible legal theory—novel or otherwise—for holding private entities liable as government actors in the circumstances presented, particularly in view of recent Supreme Court authority warning against the expansion of the state-action doctrine beyond its traditional boundaries and narrowly construing the availability of *Bivens* actions. *See*

---

[4] In his opposition to defendants' motion to dismiss (Dkt. No. 19), Mr. Daniels effectively conceded that his claim could not be maintained under § 1983. He wrote: "This lawsuit should be considered a civil rights action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), not under Section 1983, because the government actors here are federal officials. It was brought directly under the United States Constitution, as is required for a *Bivens* action." Dkt. No. 19 at n.1.

5

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. —, 139 S. Ct. 1921, 1934 (2019) (concluding that "[o]perating public access channels on a cable system is not a traditional, exclusive public function," and declining to "[e]xpand[] the state-action doctrine beyond its traditional boundaries"); *Egbert v. Boule,* 596 U.S. —, 142 S. Ct. 1793, 1803, 1807 (2022) (rejecting implied cause of action under *Bivens* for First Amendment retaliation claim, and emphasizing "disfavor" with which such implied claims are viewed).

Mr. Daniels's reliance on *Legal Services of Northern California, Inc. v. Arnett*, 114 F.3d 135, 141 (9th Cir. 1997) for the proposition that novel constitutional claims should not be viewed as frivolous, is misplaced. As defendants note, the question before the court in *Legal Services* was whether a particular statute created rights enforceable in a §1983 action. *Legal Services*, 114 F.3d at 138. In that case, the Ninth Circuit considered whether the plaintiff, a legal services agency, suffered a deprivation of federal statutory rights under the Older Americans Act based on a state agency's awarding a grant to a rival applicant. After a detailed analysis of the Act, the Ninth Circuit concluded that the Act did not create rights enforceable under § 1983. *Id.* However, the court declined to award attorneys' fees to the prevailing defendant because while the action was not supported by existing precedent, "[i]t is likely that [the plaintiff] was launching a good faith effort to advance a novel theory under our § 1983 jurisprudence." *Id.* at 141. The court concluded that the plaintiff's arguments "were not wholly without merit." *Id.* Here, by contrast, Mr. Daniels purported to assert a First Amendment claim against private entities based on legal theories that were either expressly foreclosed by existing precedent or entirely meritless on their own terms.

For the reasons explained in the Court's order granting defendants' motion to dismiss Mr. Daniels's First Amendment claim, the Court finds that the claim clearly lacked merit and was frivolous from the outset. Defendants are therefore entitled to an award of the attorneys' fees incurred in defending against that claim.

**B.     Amount of Attorneys' Fees**

Defendants ask for an award of $38,576 in attorneys' fees that they say represents a conservative estimate of the amount of fees incurred in defending solely against Mr. Daniels's First Amendment claim. Dkt. No. 39 at 10. Mr. Daniels does not challenge the reasonableness of

6

defendants' counsel's billing rates or the amount of time counsel spent on the defense as a whole; rather, he argues that defendants have not satisfied their evidentiary burden to establish the amount of fees incurred defending against this specific claim. Dkt. No. 42 at 7.

"Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim. Or what is the same thing stated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim." *Fox v. Vice*, 563 U.S. 826, 833 (2011). "[T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second that matters." *Id.* at 838. The fee applicant must submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (cleaned up). "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

The Ninth Circuit emphasizes that "the pro-rata allocation of general fees between claims for which a fee award is appropriate and claims for which such an award is not appropriate, based solely on the number of claims, is impermissible." *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971-72 (9th Cir. 2011). The Ninth Circuit explains that civil rights claims "provide an important outlet for resolving grievances in an orderly manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes." *Id.* The strict requirements for awarding fees to civil rights defendants "was adopted expressly in order to avoid discouraging civil rights plaintiffs from bringing suits, and thus 'undercut[ting] the efforts of Congress to promote the vigorous enforcement of' the civil rights laws." *Id.* (quoting *Christiansburg*, 434 U.S. at 422). Finally, a district court considering an award of fees to a prevailing civil rights defendant

7

"should consider the financial resources of the plaintiff." *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).

Defendants argue that Mr. Daniels's frivolous First Amendment claim was not intertwined with his other claims, and that their work in defending against the First Amendment claim was "distinct and segregable" from their work on their other claims. Dkt. No. 43 at 5. Mr. Daniels does not dispute this point. However, he argues that defendants have not met their burden of establishing that the fees sought were incurred solely as a result of defending against his First Amendment claim because defendants have not provided "claim-by-claim billing entries." Dkt. No. 42 at 7-8. In support of his position, Mr. Daniels cites four cases that he says stand for the proposition that "failure to separate work" on frivolous claims from non-frivolous claims precludes recovery of fees. *Id.* at 10. This authority is not particularly helpful. In two of Mr. Daniels's cases, the court declined to find that any asserted claims were frivolous and so did not reach this question at issue. *See* Dkt. No. 43 at 5; *Ooley v. Citrus Heights Police Dep't*, No. 2:12-CV-00095-JAM, 2013 WL 1281845 (E.D. Cal. Mar. 26, 2013); *Ramsey v. Rowe*, No. CV 12-0367-TUC-CKJ, 2014 WL 232269 (D. Ariz. Jan. 22, 2014). And in the other two cases, the court did not award fees because the facts underlying the frivolous and non-frivolous claims were so intertwined that no work could be distinctly attributed to the non-frivolous claims. *See Newfarmer-Fletcher v. Cnty. of Sierra*, No. 2:11-CV-02054 JAM, 2012 WL 5289374, at *1 (E.D. Cal. Oct. 23, 2012) ("Plaintiff's civil rights claim and state tort claims are intertwined because the state law claims are based on the conduct that Plaintiff alleges was retaliatory in her § 1983 claim."); *Downs v. Nevada Taxicab Auth.*, No. 2:11-CV-453 JCM PAL, 2011 WL 6148622, at *2 (D. Nev. Dec. 9, 2011) (claims inseparable where claims were dismissed against state and state official "in his official capacity" but not against state official in his individual capacity). None of the cases cited by Mr. Daniels stands for the proposition that a defendant may not recover attorneys' fees unless billing entries are segregated on a claim-specific basis as between frivolous and non-frivolous claims.

Nevertheless, this Court "must determine whether the fees requested would not have accrued but for the frivolous claim." *Fox*, 563 U.S. at 839. Few cases address the permissible

8

methodologies for making this determination after *Fox*. Defendants argue that the Court may rely on an estimate in awarding fees. *See* Dkt. No. 39 at 9-10; Dkt. No. 43 at 5. In support of their position, defendants rely on two district court decisions, *SoCal Recovery, LLC v. City of Costa Mesa*, No. 8:18-cv-01304-JVS-PJW, 2020 WL 7347862 (C.D. Cal Oct. 9, 2020) and *Zaman v. Kelly Servs., Inc.*, No. 15-CV-04601-HRL, 2017 WL 2335601 (N.D. Cal. May 30, 2017). In both cases, the district court acknowledged the difficulty of precisely calculating fees associated only with frivolous claims and relied instead on an estimate of the fees incurred. *See SoCal Recovery*, 2020 WL 7347862, at *3 (declining to award all fees claimed, but relying on court's "overall sense of the action" to conclude that "rough justice" would be satisfied by awarding defendant 10% of its total fees "as a reasonable estimate of the amount of time it spent litigating the claims the Court found to be frivolous."); *Zaman*, 2017 WL 2335601, at *8 (noting that "in some instances, it is possible to relate [billing] tasks to particular claims—not all [billing] line-items segregate the claims," but relying on court's understanding of the case to "reduce Defendant's fees by 33% so that it is only compensating [defendant] for work that would not have been performed but for the frivolous claims."). The Court agrees that, consistent with *Fox*, a district court may rely on a reasonable estimate of fees incurred by a prevailing defendant exclusively in connection with a frivolous claim, where a precise calculation is not possible. *See Equal Emp. Opportunity Comm'n v. CRST Van Expedited, Inc.*, 944 F.3d 750, 760 (8th Cir. 2019) (affirming district court fee award that was "calculated . . . using a flexible and commonsense application of the *Fox* standard in light of the realities of the case, how it was litigated and the court's unique understand[ing] of these proceedings.") (internal quotations omitted).

Here, Mr. Daniels's First Amendment claim was distinct from his other asserted claims. While his First Amendment claim asserted a purported violation of his rights protected by the U.S. Constitution, his remaining claims were based on state law and all involved either contract or quasi-contract theories of liability, in addition to an unfair competition claim premised on other asserted claims. *See, e.g.,* Dkt. No. 31 at 13-19 (discussing state-law claims). In analyzing Mr. Daniels's claims for purposes of resolving defendants' motion to dismiss, the Court considered distinct sets of facts and legal theories. With respect to his First Amendment claim, the

Court considered statements made by members of Congress and whether those statements could be considered state action. *See* Dkt. No. 31 at 5-6, 8-13. But with respect to Mr. Daniels's state-law claims, the Court considered YouTube's Terms of Service and Community Guidelines, the notice and appeal process YouTube provided Mr. Daniels after his videos were removed, and whether YouTube paid Mr. Daniels in accordance with any agreement those parties had. *See id.* at 13-18. While all of Mr. Daniels's claims stem from the alleged removal of his videos and the alleged "demonetization" of his account, the claims were not otherwise "intertwined" in any meaningful sense, as the First Amendment claim and the state-law claims relied on distinct sets of facts and distinct legal theories.

Defendants argue that 20% of the fees incurred in defending against Mr. Daniels's claims in this action are attributable solely to the frivolous First Amendment claim. They rely on billing entries and a declaration from counsel regarding the nature of the work performed. Defendants' billing entries span the period from July 16, 2020, the date Mr. Daniels filed his complaint, to October 6, 2020, the date the Court held a hearing on defendants' motion to dismiss Mr. Daniels's original complaint. Dkt. No. 39-1, Ex. B. The billing entries are not segregated by claim, and most entries generally refer to work that could have been performed on any one or more of Mr. Daniels's claims. *See id.* For example, an entry on July 27, 2020 states: "Revise and edit outline of motion to dismiss in response to feedback from [firm] team; confer with [firm] team re the same; research case law in support of motion."[5] Like the prevailing defendants in *SoCal Recovery*, defendants' billing entries here do not permit the Court to conclude with certainty how much time defendants spent solely on Mr. Daniels's frivolous First Amendment claim. *See SoCal Recovery, LLC*, No. 8:18-cv-01304-JVS-PJW, 2020 WL 7347862, at *3.

Defendants estimate that "considerably more than 20% of the time spent in connection with the defense of Plaintiff's case . . . was spent responding to Plaintiff's Section 1983 claim." Dkt. No. 39-1 at 3. They estimate that 20% of the fees incurred were incurred solely in connection

---

[5] A few billing entries do refer to specific claims. For example, an entry on September 4, 2020 refers to an attorney's work to "prepare analysis of availability of *Bivens* claim in First Amendment speech context." And an entry on July 31, 2020 includes "confer re draft outline of motion to dismiss complaint and related legal research into plaintiff's state action theory."

with the First Amendment claim, "based on lead counsel's conservative assessment of the division of labor, the number of pages of briefing dedicated to Plaintiff's Section 1983 claim, the number of paragraphs in Plaintiff's Complaint dedicated to that claim, and the amount of time spent at the hearing on the claim." Dkt. No. 39 at 9-10; Dkt. No. 43 at 5. Defendants' counsel attests that this estimate excludes "charges that [defendants' counsel] did not believe were the appropriate subject of a request for reimbursement because, for example, they were exclusively for work unrelated to Plaintiff's Section 1983 claim." *Id.* Based on these considerations, defendants say that 20% is an *underestimate* of the amount of time that had to be spent in defending against the First Amendment claim.

Having reviewed defendants' counsel's billing entries and the supporting declaration, and given the Court's own experience with this case, the Court concludes that at least 20% of defendants' total fees were expended solely in defending against the First Amendment claim. Specifically, the Court agrees that the extent of briefing and oral argument devoted to the First Amendment claim accurately approximates the proportion of fees devoted to that aspect of the case. In addition, the Court has independently reviewed defendants' counsel's billing entries to ensure that the number of hours supporting the fee request are reasonable. *See Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992) (court has an independent duty to ensure that the number of hours supporting fee request are reasonable). Accordingly, the Court finds that $38,576 represents a reasonable amount of attorneys' fees incurred solely in defending against Mr. Daniels's frivolous First Amendment claim.

As noted above, the Court should consider the unsuccessful plaintiff's financial circumstances before awarding attorneys' fees to a prevailing defendant. Although he describes himself as "a fledgling individual consumer," Mr. Daniels does not argue that the amount of the fee award defendants seek is burdensome in light of his financial circumstances. *See* Dkt. No. 42 at 10. The only information regarding Mr. Daniels's financial resources available to the Court comes from Mr. Daniels's complaint, which states that Mr. Daniels's received estimated annual ad-based revenue from his YouTube channel *alone* of over $180,000 in the year 2019-2020. Dkt. No. 1 ¶ 14. The Court finds that Mr. Daniels's financial circumstances do not preclude an award

11

of attorneys' fees against him.

## IV. CONCLUSION

The Court concludes that Mr. Daniels's First Amendment claim is frivolous and that defendants are entitled to an award of attorneys' fees. The Court awards defendants attorneys' fees in the amount of $38,576. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: March 8, 2023



VIRGINIA K. DEMARCHI
United States Magistrate Judge